**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| STANLEY COOK, | : | Civil No. 09-6523 (JBS) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| RAJIV K. SHAH, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

---

**APPEARANCES:**

> STANLEY COOK, #266122B, Plaintiff <u>Pro Se</u>
> South Woods State Prison
> 215 Burlington Road South
> Bridgeton, NJ 08302

**SIMANDLE**, District Judge:

Stanley Cook, a prisoner incarcerated at South Woods State Prison, seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915. Based on his affidavit of poverty, prison account statement and the apparent absence of three qualifying dismissals, pursuant to 28 U.S.C. § 1915(g), this Court will grant Plaintiff Crymes's application to proceed <u>in forma pauperis</u> and direct the Clerk to file the Complaint, as amended, without prepayment of the filing fee. <u>See</u> 28 U.S.C. § 1915(a).[1] Having reviewed Plaintiff's allegations, this Court will dismiss the federal claims raised in the Complaint, as amended, without

---

[1] This Court initially denied Plaintiff's application to proceed <u>in forma pauperis</u> as incomplete. Plaintiff subsequently completed his application.

prejudice to the filing of an amended complaint, and decline to exercise supplemental jurisdiction over claims arising under state law.

## I.  BACKGROUND

Plaintiff brings this action against Dr. Rajiv K. Shah, Dr. Abu Ahsan, Dr. Ihuoma Nwachukwu, Lisa Renee Mills, Correctional Medical Services ("CMS"), the contract provider of medical services for state inmates, South Woods State Prison ("SWSP"), and New Jersey Department of Corrections.  He asserts the following facts, which allegedly occurred while he was confined at SWSP.  In June 2007 nurse Mills visually examined Plaintiff when a corrections officer sent Plaintiff to the infirmary as a result of Plaintiff's experiencing sharp abdominal pain and bleeding from the rectum.  Defendant Mills concluded that the bleeding was due to hemorrhoids and that the abdominal pain may have been caused by constipation; Mills prescribed a laxative and anal lubrication, and sent Plaintiff back to his unit.

Plaintiff asserts that he submitted medical request slips advising medical staff of continued bleeding and, later in June, Dr. Abu Ahsan conducted a full examination and diagnosed a cancerous polyp in the lower area of the rectum.  Various medical officials continued to see Plaintiff in July and August. Plaintiff asserts that these officials treated him with laxatives and anal lubricants.  Plaintiff alleges that in mid-August

2

Plaintiff was transported to St. Francis Medical Center in Trenton, New Jersey.  After conducting a full examination, Dr. Rajiv K. Shah, a physician employed by CMS to conduct surgery on inmates at St. Francis, concluded that Plaintiff had a cancerous polyp in the rectum.  Dr. Shah scheduled Plaintiff for an MRI and a consultation with a specialist and sent Plaintiff back to SWSP. Plaintiff asserts that he continued to experience bleeding and pain, and Mills continued to treat him with laxatives and anal lubricants.

Plaintiff asserts that on August 29, 2007, he was seen by specialist Dr. Gersten who ordered a colonoscopy and a CAT scan of the abdomen and pelvis.  Plaintiff alleges that the colonoscopy, which was performed on October 3, 2007, showed a large mass; the biopsy revealed that Plaintiff suffered with invasive adenocarcinoma, moderately differentiated; and the CAT scan showed thickening of the rectal wall and a lesion in the end of Plaintiff's large intestine (not his rectum, as diagnosed by Dr. Ahsan.)  Plaintiff alleges that Dr. Gersten recommended immediate exploratory surgery, which was initially scheduled for December 2, 2007, but postponed until December 15, 2007, because officials at SWSP failed to follow the pre-surgery preparations, i.e., give Plaintiff the prescribed pre-operative diet, administer prescribed colon cleansing medication, and advise Plaintiff he had to fast the prior evening.

3

Plaintiff alleges that on December 17, 2007, Dr. Shah performed surgery at St. Francis Medical Center, discovered 11 cancerous polyps in the large intestine, and removed the large intestines in full.  Plaintiff states that he spent five days in St. Francis and on December 21, 2007, he returned to the Extended Care Unit at SWSP.  Plaintiff alleges that at 4 a.m. on December 22, 2007, he was awakened by abdominal pain and rectal bleeding. He asserts that the nurse who responded called Dr. Nwachukwu, who took no action that night.  He alleges that the next day, Dr. Ahsan visited Plaintiff, asked Plaintiff if he was feeling better, and when Plaintiff responded "yes," Dr. Ahsan released Plaintiff from the Extended Care Unit.

Plaintiff asserts that he again experienced abdominal pain and bleeding in the evening of December 27, 2007.  He alleges that the nurse telephoned Dr. Ahsan who instructed her to return Plaintiff to his cell and to take no further action until the next morning.  Plaintiff asserts that the next morning he continued to experience pain and heavy bleeding, he lost consciousness, and officials transported Plaintiff to South Jersey Health Care Hospital.  Plaintiff asserts that doctors administered several pints of blood and conducted numerous tests, but because they could not determine the cause of the pain and bleeding, on January 3, 2008, doctors performed exploratory surgery.  Plaintiff asserts that the surgeons found that "Dr.

4

Rajiv K. Shah, MD of CMS, who removed the plaintiff's large intestines, failed to secure three large arteries, and that this was the cause of the hemorrhaging."  (Docket Entry #1, p. 11.) The surgeons secured the arteries and, on January 7, 2008, Plaintiff was transported back to the prison.  He allegedly recovered fully within weeks.

Plaintiff asserts the following claims for relief:

The facts related above discloses the failure of defendant, [] Lisa Renee Mills [] to properly respond to plaintiff's serious medical condition by failing to conduct an adequate examination and order the proper tests to properly treat plaintiff's injury, which was most likely the catalyst to his debilitating condition; For mis-diagnosing plaintiff's condition for one of hemorrhoids; for continuously prescribing the wrong form of medication which was not helping plaintiff.

The facts related above disclose that Dr. Rajiv K. Shah, MD., was deliberately indifferent to plaintiff's serious medical condition by rendering sub-standard, incompetent surgery, in the failing to secure three large arteries during surgery, which caused the plaintiff weeks of excruciating pain and suffering, and almost his life.

The facts related above disclose that [Lisa Renee Mills, LP], was deliberately indifferent to plaintiff's serious medical condition by failing to conduct an adequate examination and order the proper tests to properly treat plaintiff's injury, which, was most likely the catalyst to his debilitating condition; For mis-diagnosing plaintiff's condition for one of hemorrhoids; for continuously prescribing the wrong form of medication which was not helping plaintiff.

The facts related above disclose that the
defendant, Correctional Medical Services,
failed to institute a policy by which doctors
are available 24 hours a day to intensive
care patients housed in state institutions
which they provide medical care for; failing
to ensure that all medical doctors they hire
are competent and qualified to render[]
medical services; and failing to institute
policies which ensure that patients get
properly prepared for surgery.

The facts related above disclose that the
defendant, New Jersey Department of
Corrections, failed to ensure that CMS
institute a policy by which doctors are
available 24 hours a day to intensive care
patients housed in state institutions which
they provide medical care for; failing to
ensure that all medical doctors employed by
CMS are competent and qualified to render[]
medical services; and failing [to] ensure
that CMS institute policies which ensure that
patients get properly prepared for surgery.

(Docket Entry #1, pp. 12-13 & #6-1, p. 2.)

Plaintiff seeks declaratory and injunctive relief and

damages.  (Docket Entry #6-1, p. 2.)

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-

134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),

requires the Court, prior to docketing or as soon as practicable

after docketing, to review a complaint in a civil action in which

a plaintiff is proceeding in forma pauperis or a prisoner seeks

redress against a governmental employee or entity.  See 28 U.S.C.

§§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua

sponte dismiss any claim if the Court determines that it is

6

frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard
> . . . demands more than an unadorned
> ["]the-defendant-unlawfully-harmed-me["]
> accusation. [Twombly, 550 U.S.] at 555 . . .
> . A pleading that offers "labels and
> conclusions" or "a formulaic recitation of
> the elements of a cause of action will not
> do." [Id.] at 555. [Moreover,] the
> plausibility standard . . . asks for more
> than a sheer possibility that a defendant has
> acted unlawfully. Id. [Indeed, even w]here a
> complaint pleads facts that are "merely
> consistent with" a defendant's liability,
> [the so-alleging complaint still] "stops
> short of [showing] plausibility of
> 'entitlement to relief.'" Id. at 557
> (brackets omitted). [A fortiori,] the tenet
> that a court must accept as true all of the
> allegations contained in a complaint is
> inapplicable to legal conclusions [or to
> t]hreadbare recitals of the elements of a
> cause of action, supported by mere conclusory
> statements [, i.e., by] legal conclusion[s]
> couched as a factual allegation [e.g.,] the
> plaintiffs' assertion of an unlawful
> agreement [or] that [defendants] adopted a

> policy "'because of,' not merely 'in spite
> of,' its adverse effects upon an identifiable
> group." . . . . [W]e do not reject these bald
> allegations on the ground that they are
> unrealistic or nonsensical. . . . It is the
> conclusory nature of [these] allegations . .
> . that disentitles them to the presumption of
> truth. . . . [Finally,] the question [of
> sufficiency of] pleadings does not turn [on]
> the discovery process.  <u>Twombly</u>, 550 U.S.] at
> 559 . . . . [The plaintiff] is not entitled
> to discovery [where the complaint asserts
> some wrongs] "generally," [<u>i.e.</u>, as] a
> conclusory allegation [since] Rule 8 does not
> [allow] pleading the bare elements of [the]
> cause of action [and] affix[ing] the label
> "general allegation" [in hope of developing
> actual facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

The Third Circuit observed that <u>Iqbal</u> hammered the "final

nail-in-the-coffin" for the "no set of facts" standard set forth

in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[2] which was

applied to federal complaints before <u>Twombly</u>.  <u>See</u> <u>Fowler v. UPMC</u>

<u>Shadyside</u>, 578 F.3d 203 (3d Cir. 2009).  "A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S.

Ct. at 1949.  To determine the sufficiency of a complaint under

the pleading regime established by <u>Iqbal</u> and <u>Twombly</u>,

---

[2]  The <u>Conley</u> court held that a district court was permitted
to dismiss a complaint for failure to state a claim only if "it
appear[ed] beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief."
<u>Conley v. Gibson</u>, 355 U.S. at 45-46.

> a court must take three steps:  First, the
> court must "tak[e] note of the elements a
> plaintiff must plead to state a claim."
> Iqbal, 129 S. Ct. at 1947.  Second, the court
> should identify allegations that, "because
> they are no more than conclusions, are not
> entitled to the assumption of truth."  Id. at
> 1950.  Finally, "where there are well-pleaded
> factual allegations, a court should assume
> their veracity and then determine whether
> they plausibly give rise to an entitlement
> for relief."  Id.

Santiago v. Warminster Township, ___ F. 3d ___, 2010 WL 5071779

at *4 (3d Cir. Dec. 14, 2010); see also Fowler, 578 F.3d at 210-

11 ("a complaint must do *more than allege the plaintiff's*

*entitlement to relief*.  A complaint has to "show" such an

entitlement with its facts") (emphasis supplied).

     The Court is mindful that the sufficiency of this pro se

pleading must be construed liberally in favor of the plaintiff,

even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

With these precepts in mind, the Court will determine whether any

claim raised in the Complaint should be dismissed.

### III.  DISCUSSION

     A district court may exercise original jurisdiction over

"Cases, in Law and Equity, arising under this Constitution, the

Laws of the United States, and Treaties made, or which shall be

made, under their authority."  U.S. Const. art. III., § 2; see

also 28 U.S.C. § 1331.  Section 1983 of Title 42 of the United

States Code authorizes a person such as Plaintiff to seek redress

for a violation of his federal civil rights by a person who was

acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  § 1983 Liability of SWSP and NJDOC

The Court will dismiss the New Jersey Department of Corrections and SWSP as defendants because they are not "persons" subject to suit under § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

B.  § 1983 Liability of Individual Defendants

Plaintiff claims that nurse Mills, Dr. Ahsan, Dr. Shah, and Dr. Nwachukwu are liable under § 1983 because they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States

Constitution.  The Eighth Amendment's prohibition against cruel and unusual punishment obligates jail officials to provide medical care to inmates.  See Estelle v. Gamble, 429 U.S. 97, 103 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Objectively, the deprivation must be sufficiently serious, id. at 834, and the defendant must subjectively "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[3] Id. at 837.  To satisfy the objective element of an Eighth Amendment medical claim, the inmate must assert facts showing that the medical need "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).  Where delay is involved, the seriousness of an inmate's medical need is determined by the effects of the delay.  Id.; Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir.1997); Hill v. Dekalb

---

[3] "[I]t is not sufficient that the official should have been aware" of the substantial risk to inmate health or safety.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

Regional Youth Detention Center, 40 F.3d 1176, 1188-89 (11th Cir. 1994); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir.1993).  In this case, Plaintiff's alleged abdominal pain, rectal bleeding, cancerous polyps and hemorrhaging were serious medical needs.

Deliberate indifference - the subjective component - may include "indifference ... manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Erickson, 551 U.S. at 90 (footnotes and internal quotation marks omitted).  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse, 182 F.3d at 197.  However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Rouse, 182 F.3d at 197 ("in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to

12

the conscience of mankind") (citation and internal quotation marks omitted).

As Plaintiff's medical needs were serious, this Court will consider whether Plaintiff has alleged enough facts under the Iqbal plausibility standard to show deliberate indifference. Plaintiff contends that nurse Lisa Renee Mills was deliberately indifferent by failing to order diagnostic tests when Plaintiff initially complained in June 2007 of pain and bleeding. The failure of Mills, a nurse, to order diagnostic tests does not satisfy the deliberate indifference standard. Nurses are not generally permitted to order diagnostic testing without a physician and, in any event, the alleged failure to immediately order tests is as worst negligence. Moreover, given that Dr. Ahsan diagnosed the cancerous polyps later in June, nurse Mills' failure to immediately order diagnostic testing does not constitute deliberate indifference.

Plaintiff further alleges that Mills incorrectly diagnosed his condition as hemorrhoids and constipation, and she continued to treat Plaintiff with laxatives and anal lubricants even after she knew that these treatments had not eliminated the abdominal pain and rectal bleeding. Mills' incorrect diagnosis of Plaintiff's cancer and her treatment with laxatives and anal lubricants could constitute negligence, which does not satisfy the deliberate indifference standard. See, e.g., Weigher v.

13

Prison Health Services, 2010 WL 4739701, *2 (3d Cir.  Nov. 23, 2010) ("Weigher's allegations regarding [physician assistant] Thompson also fall short of establishing a plausible claim of deliberate indifference.  Weigher alleges only that Thompson did not find anything wrong with Weigher's back and consequently did not help Weigher with his back problem. We agree with the District Court that such a claim of misdiagnosis would sound in negligence as a malpractice suit, and does not constitute deliberate indifference").

Plaintiff claims that Dr. Ahsan was deliberately indifferent by diagnosing cancer in the rectum when the cancer was in Plaintiff's large intestines.  As previously stated, an incorrect diagnosis would constitute negligence at worst.  Plaintiff further claims that Dr. Ahsan and Dr. Nwachukwu were deliberately indifferent when on December 22, 2007, Dr. Nwachukwu, and on December 27, 2007, Dr. Ahsan, failed to take immediate action when Plaintiff woke up during the night with post-operative abdominal pain and bleeding.  Given that Plaintiff was taken to South Jersey Health Care Hospital on December 28, 2007, the alleged failure to send Plaintiff to the hospital sooner presents a claim of negligence, not deliberate indifference.  See Rhines v. Bledsoe, 2010 WL 2911628, *2 (3d Cir. July 27, 2010) ("Rhines' claims against defendants are based on his belief that he should have been treated in a more timely manner and through the

14

immediate use of an MRI. The record shows that Rhines was
afforded continual medical care for his knee injury, and that
prison staff treated and evaluated him on each visit. Therefore,
we agree with the District Court that Rhines cannot show
defendants possessed the requisite mental state necessary to
prove an Eighth Amendment violation.  Moreover, Rhines'
disagreement about his course of treatment, namely, that an MRI
should have been immediately ordered, does not demonstrate the
defendants were deliberately indifferent to his medical needs.
Mere disagreement as to the proper medical treatment will not
support a claim under the Eighth Amendment"); Ali v. Howard, 353
Fed. App'x 667, 671 (3d Cir. 2009) ("the dispute between Ali and
defendants involves the extent and course of his treatment, which
does not state a constitutional violation under the Eighth
Amendment"); Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004)
("mere disagreement as to the proper medical treatment" is
insufficient to state a constitutional violation); Inmates of
Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979)
("Courts will 'disavow any attempt to second-guess the propriety
or adequacy of a particular course of treatment ... (which)
remains a question of sound professional judgment.' " (quoting
Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)).

Plaintiff complains that Dr. Shah was deliberately
indifferent in failing to secure three arteries when he removed

15

Plaintiff's large intestines during surgery on December 17, 2007, thereby causing Plaintiff to lose much blood, experience severe pain for 17 days, and undergo a second surgery to secure the arteries on January 3, 2008.  While these serious allegations give this Court pause, they assert classic negligence and, as such, are not actionable under § 1983 which requires deliberate indifference.  For example, in <u>Bramson v. Sulayman</u>, 251 Fed. App'x 84, 86 (3d Cir. 2007), inmate Bramson alleged that doctors failed to diagnose heart disease, delayed his access to an outside specialist and that, by the time he saw the specialist and was properly diagnosed with heart disease, he required immediate hospitalization and the installation of a pacemaker and electric defibrillator, resulting in permanent heart and lung damage.  <u>Id.</u> at p. 86.  The Third Circuit affirmed the dismissal of his Eighth Amendment claim because his allegations showed only negligence.  "Bramson's complaint makes clear that the defendants treated him on many occasions.  He claims that those treatments proved ineffective and that defendants negligently failed to diagnose his heart condition, but those allegations do not state an Eighth Amendment claim."  <u>Id.</u>; <u>see also</u> <u>Latona v. Prison</u> <u>Health Services Inc.</u>, 2010 WL 4017041, *3 (3d Cir. Oct. 14, 2010) ("To the extent Latona also complains that George was deliberately indifferent to his need for treatment for his physical medical issues . . . there is no evidence that George, a

16

Mental Health Counselor, was aware that Latona had been vomiting or was in physical pain.  Although Latona complained to George that he was vomiting, George was at best negligent for not investigating his complaint with other staff members"); Lewal v. Ali, 289 Fed. App'x 515, 517 (3d Cir. 2008 ("Here, Lewal's disagreement as to the proper medical treatment he should receive does not support an Eighth Amendment claim"); Ham v. Greer, 269 Fed. App'x 149, 1151 (3d Cir. 2008) (Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred. This simply does not rise to the level of a violation of a constitutionally protected right").

C.  § 1983 Liability of Correctional Medical Services

Although Correctional Medical Services was acting under color of state law, a corporate entity providing medical care to inmates cannot be found liable under § 1983 for the negligent acts of its employees.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691-92 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583 (3d Cir. 2003).  In order for an entity such as CMS to be liable, an inmate must show that there was "a relevant . . . policy or custom and that the policy caused the constitutional violation."  Natale, 318 F.3d at 584.  Under § 1983, a "policy" is made when a decisionmaker possessing final authority to establish policy with respect to

the action issues a policy or edict.  Id. at 584.  A custom is an act that has not been formally approved by the policymaker but that is so widespread to have the force of a rule or policy.  Id.

The unconstitutional acts of an employee may be deemed to be the result of a custom or policy of the entity for whom the employee works, thereby rendering the entity liable under § 1983, under the following three circumstances:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.  The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself.  Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the [entity] is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale, 318 F.3d at 584 (citations, internal quotation marks and footnotes omitted).

In this case, Plaintiff relies on the third circumstance, i.e., the policymaker was deliberately indifferent in failing to establish policies where the need to take some action to control its employees was so obvious and the inadequacy of existing practices so likely to result in the violation of constitutional

rights.  First, Plaintiff asserts that the failure to institute a policy by which doctors are available 24 hours a day caused violation of Plaintiff's Eighth Amendment rights.  This does not show deliberate indifference, however, since Plaintiff  alleges that doctors Ahsan and Nwachukwu were available by telephone on December 22 and 27.  Moreover, the alleged failure to immediately examine Plaintiff and/or take action during the night did not cause violation of Plaintiff's constitutional rights, since it was negligence at worst.

Next, Plaintiff asserts that CMS failed to ensure that its doctors were competent and qualified to render medical services.  However, Plaintiff does not claim that these doctors were practicing without a license and Plaintiff does not assert facts showing a policymaker for CMS knew of a long history of incompetent performance by defendants (which occurred before defendants' alleged negligent conduct toward Plaintiff), Accordingly, Plaintiffs' factual allegations do not support the conclusion that the need to take some action to control the doctor-defendants' negligent conduct was obvious or that the existing practices were inadequate.

Finally, Plaintiff asserts (without elaboration) that because he was not prepared for surgery when it was initially scheduled for December 2, 2007, CMS is liable under § 1983 for failing to institute a policy of ensuring that inmates are

properly prepared for surgery.  Again, Plaintiff's factual
allegations do not show that a policymaker for CMS was aware of
an obvious need to take some action to control its employees'
conduct in preparing inmates for surgery or aware that the
existing pre-operative care practices at SWSP were obviously
inadequate.  Under these circumstances, Plaintiff has failed to
assert facts supporting the conclusion that the failure of a
policymaker of CMS to institute specific policies caused
violation of his constitutional rights.  See Smith v. Merline,
719 F. Supp. 2d 438, 449 (D.N.J. 2010) ("Plaintiff seems to
suggest that because Defendants Connors and Neal (perhaps along
with other CFG staff members) were able to allegedly repeat
unconstitutional conduct there must be some inadequate
unconstitutional policy or custom.  It cannot be the case that in
all circumstances where employees repeatedly violate the
Constitution the employer may be found liable.  A rogue employee
may succeed in evading even the most efficient policies and
customs designed to avoid constitutional injury").

The Complaint, as written, fails to state a claim for
violation of the Eighth Amendment under § 1983 against CMS.
However, Plaintiff's allegations do not foreclose the possibility
that the policymaker for CMS failed to act affirmatively,
although the need to take some action to control the agents of
CMS was so obvious, and the inadequacy of existing practice so

20

likely to result in the violation of constitutional rights, that
the policymaker for CMS can reasonably be said to have been
deliberately indifferent to the need.  See Natale, 318 F.3d at
584.  This Court will therefore grant Plaintiff leave to file an
amended complaint asserting facts supporting the conclusion that
CMS is liable for violation of his constitutional rights by the
failure of its policymaker to act affirmatively, as outlined
above.

Thus, all federal claims under 42 U.S.C. § 1983 will be
dismissed for failure to state a claim without prejudice to
plaintiff's right to file an amended complaint against CMS for
violation of constitutional rights if plaintiff can supply the
necessary factual allegations.

D.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and
decide state-law claims along with federal-law claims when they
are so related to claims in the action within such original
jurisdiction that they form part of the same case or
controversy."  Wisconsin Dept. of Corrections v. Schacht, 524
U.S. 381, 387 (1998) (citation and internal quotation marks
omitted).  Where a district court has original jurisdiction
pursuant to 28 U.S.C. § 1331 over federal claims and supplemental
jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a),
the district court has discretion to decline to exercise

supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers v. Gibbs, 383 U.S. at 726; Growth Horizons, Inc., 983 F.2d at 1284-1285.

In this case, Plaintiff asserts that he has filed an action in the New Jersey courts.  Presumably, Plaintiff has asserted his claims arising under New Jersey law in that action.  In any event, since this Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### IV.  CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's application to proceed in forma pauperis, dismiss the federal claims raised in the Complaint without prejudice to the

filing of an amended complaint within thirty (30) days, and the Court will decline to exercise supplemental jurisdiction over claims arising under state law.  The Court therefore expresses no opinion of plaintiff's claims for negligence against these various defendants that may arise under New Jersey law; nothing in this Opinion prevents plaintiff from filing such claims for negligence in the New Jersey Superior Court.




                                    **s/ Jerome B. Simandle**
                                    JEROME B. SIMANDLE
                                    U.S. District Judge


Dated:    **December 28**  **, 2010**